UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN
Northern Division

---

SAGINAW COUNTY, a Michigan
Municipal corporation

        Plaintiff,

v

STAT EMERGENCY MEDICAL SERVICE, INC.,
a Michigan for profit corporation

        Defendant.

Case No.17- CV-_____

HONORABLE _____

**COMPLAINT**

---

Douglas W. Van Essen (P 33169)
Lee T. Silver (P36905)
**SILVER & VAN ESSEN, P.C.**
Attorneys for Plaintiff
300 Ottawa Ave N.W., Suite 620
Grand Rapids, MI 49503
(616) 988-5600

---

    Plaintiff, Saginaw County ("County"), by its attorneys, Silver & Van Essen, P.C., states the following as its complaint against the Defendant:

**PARTIES**

    1.    The Plaintiff County is a Michigan county organized as a municipal corporation under the 1963 Constitution of the State of Michigan by the people of the State of Michigan and further empowered by various Michigan statutes, and with its administrative headquarters in the county seat of the City of Saginaw, specifically, 111 S. Michigan, Saginaw, Michigan 48602.

2.      Defendant STAT Emergency Medical Services, Inc. ("STAT") is a Michigan for profit corporation with a principal place of business located at 520 West Third Street, Flint, Michigan 48503, and which operates ambulance services within some portions of the geographic boundaries of the United States District Court of Eastern Michigan, Northern Division, including as further specified herein, the complained of activities within Saginaw County.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this dispute under Fed. R. Civ. P. 4, 28 U.S.C. §1331 (federal question jurisdiction), §1337 (antitrust jurisdiction), and §1367 (supplemental jurisdiction) and Fed. R. Civ. P. 56, 28 U.S.C. §2201 (declaratory judgment action) since there is a justiciable controversy between the parties as to whether the County's primary ambulance service contract for its citizens is valid under state enabling legislation as asserted by the County and contested by STAT or is prohibited by various provisions of the Sherman Anti-Trust Act, 15 U.S.C. §1 et. seq. as asserted by STAT and contested by the County and because a declaratory judgment will resolve this controversy.

4.      Venue is appropriate in the Eastern District of Michigan, Northern Division, under Sections 4 and 12 of the Sherman Anti-Trust Act, 15 U.S.C. §§ 4, 15, 22 and 28 U.S.C. §1391 (b) and (c), because the County is located and wholly operates within Saginaw County, Michigan which is within said District and Division, STAT is transacting business in this District and Division, and the events giving rise to the claim occurred within the Eastern District of Michigan, Northern Division.

## GENERAL ALLEGATIONS

5. With the emergence of modern 911 emergency service communication systems in the late 20th Century, Michigan adopted the Emergency 9-1-1 Service Enabling Act, MCL §484.1101 et. seq. ("911 Act") to expressly govern the delivery of 911 emergency services within the State of Michigan. The 911 Act creates an "Emergency 9-1-1 Service Committee" ("State 911 Committee") which is charged with providing recommendations to Michigan counties in the development and operation of model 911 systems for emergency services within their 911 Service Plans ("County 911 Plan"). MCL §484.1714(e) and (f).

6. The need for the local legislative body governing the dispatching jurisdiction to establish a macro ambulance system became apparent throughout the State of Michigan, culminating in the State 911 Committee adopting "Policy E" regarding "Emergency Medical Services ['EMS'] Dispatching" on September 21, 2010. See attached Exhibit A.

7. Among the findings of the State 911 Committee in Policy E is that a situation where "every [licensed] life support agency (both public and private) is given equal opportunity to respond to emergencies that they are closest to would result [i]n urban suburban areas…in chaos and would drive up EMS system costs to the point that the entire system will fail." See Exhibit A, Paragraph 2.

8. To avoid this result, and ensure adequate and timely EMS coverage through-out the dispatching jurisdiction, the State 911 Committee recommends that "PSAP [public safety answering point or dispatching operation] managers and policy-setting board should work with local/county government officials and medical control authorities to design a responsible and

accountable EMS system which ensures consistent coverage which meets community expectations." See Exhibit A, Paragraph 2

9. The State 911 Committee specifically held that it "believes that the establishment of primary EMS response areas is the most expedient way to make a dispatch determination." See Exhibit A, Paragraph 2.

10. The specific public policy objectives served by such a coordinated, macro-ambulance system in the dispatching jurisdiction include but are not limited to the following:

  A. Ensuring that all areas within the dispatching district receive ambulance services;

  B. Ensuring that all areas within the dispatching district receive ambulance services within timely averages that are monitored and for which the primary ambulance provider(s) is or are accountable;

  C. Ensuring proper coordination between and among other first responders to incidents involving EMS, including police and fire, as organized and monitored by the primary and secondary public safety answering points ("PSAPs");

  D. Ensuring that the EMS dispatching is handled, if possible, by dispatchers who are medically trained; and

  E. Ensuring that the public costs of EMS dispatching are minimized if not eliminated.

11. As a result of Policy E and the public policy objectives described above, jurisdictions that dispatch 911 emergency services across the State of Michigan began developing

macro-ambulance systems within their jurisdictions. Examples of such macro-ambulance systems in the immediate area include but are by no means limited to:

    A.    The City of Fenton in Genesee County controls 911 call answering and dispatch within its borders and has entered into an primary ambulance service contract with Defendant STAT (See Exhibit B), despite the fact that there are many other ambulance companies, including Mobile Medical Response, Inc. ("MMR") that are also licensed by the State and Genesee County Medical Control Authority to provide ambulance services in all of Genesee County, including the City of Fenton.

    B.    The County of Midland has entered into a primary ambulance services contract with the Midland Emergency Services Company, a Michigan nonprofit corporation.

    C.    The Plaintiff County entered into a five (5) year primary ambulance services contract with MMR beginning in 2009 and renewed in 2014 for another five (5) years. See Exhibit C.

12.    The macro-ambulance systems established by the dispatching jurisdictions have resulted in a variety of lawsuits, which have produced various results including the following:

    A.    *STAT v. Genesee County 911 Consortium*, Court of Appeals, Michigan Court of Appeals No. 315183 (July 1, 2014), opinion attached as Exhibit D. [The dispatching jurisdiction controls the macro-ambulance system within their districts, rather than local units of government within the dispatch jurisdiction].

  B. *Swartz Ambulance v. Genesee County,* 666 F. Supp. 2d 721 (E.D. Mich 2209) opinion attached as Exhibit E. [A Michigan county which dispatches has the right under Michigan law to enter into primary ambulance service contracts covering the dispatch jurisdiction].

  C. *STAT v. Saginaw Valley Medical Control Authority,* opinion attached as Exhibit F. [A medical control authority lacks the state law enabling authority to enact protocols governing the macro-ambulance system of the dispatch jurisdiction].

13. No court in Michigan has yet ruled as to whether a primary ambulance service contract enacted under Michigan law by the entity that controls a PSAP jurisdiction violates the Sherman Anti-Trust laws, although federal courts in other states with authorizing legislation similar to Michigan's have held that such macro-ambulance systems and their inherent anti-competitive effects are not subject to federal Anti-Trust scrutiny because of state action immunity.[1]

---

[1] See *Active Disposal, Inc. v. City of Darien,* 635 F.3d 883, 888-89 (7th Cir. 2011)["in the context of municipal powers, it is generally understood that the authority to contract contemplates the power to create exclusive contracts."]; *Southern Disposal, Inc. v. Tex. Waste Mgmt.,* 161 F.3d 1259, 1263 (10th Cir. 1998)[noting "although the enabling statute does not explicitly authorize exclusive contracts such agreements are 'a foreseeable result' of the general statutory authorization to contract; *Tal v. Hogan,* 453 F.3d 1244, 1259 (10th Cir. 2006) [authority to make contracts has foreseeable anti-competitive effect)] *Gold Cross Ambulance Co. v. City of Kansas City,* 705 F.2d 1005 (8th Cir. 1983) [city's single franchise ambulance system immune from antitrust claims because system was enacted pursuant to statute, and single-franchise system was foreseeable consequence of statute]; *Springs Ambulance Service, Inc. v. Rancho Mirage,* 745 F.2d 1270, 1273 (9th Cir. 1984) [fire Commission servicing emergency ambulance needs of three cities did not violate antitrust laws because it was enacted pursuant to California statute that provided that "The legislative body of a city may contract for ambulance service to serve the residents of the city as convenience requires"]; *Mercy-Peninsula Ambulance, Inc. v. County of San Mateo,* 791 F.2d 755, 757 (9th Cir. 1986) [county's regulation of ambulance services upheld when "it is apparent that anti-competitive effects would result from a broad authority to regulate"]; *Ambulance Service of Reno, Inc. v. Nevada Ambulance Services, Inc.,* 819 F.2d 910 (9th Cir. 1987) [single franchise ambulance system protected by state action immunity from Sherman Act attacks]; *A-1 Ambulance Serv. v. County of Monterey,* 90 F.3d 333 (9th Cir. 1996)[(single franchise ambulance system protected by state action immunity]; and *Redwood Empire Life Support v. County of Sonoma,* 190 F.3d 949, 950-951 (9th Cir. 1999).

14. Through the authority of the 911 Act and pursuant to the model system recommended by Policy E above, Saginaw County has enacted a County 911 Plan that establishes one PSAP district that is coterminous with its borders and a macro-ambulance system that designates one ambulance service provider to be selected by periodic contract in order to achieve the public benefits described in Paragraph 10 above. See Exhibit G attached.

15. STAT did not appear at either of the public hearings that were noticed in the newspaper and held by the County Board of Commissioners before enacting the County 911 Plan to object to the primary ambulance provider macro ambulance system provisions. In fact, the County has received no complaints about the 911 Plan generally or these provisions specifically from any township, local unit of government or citizen.

16. As early as 2009, the County has established the primary ambulance provider macro ambulance system through a five (5) year contract with MMR.

17. STAT did not appear at the 2009 public meeting wherein the County entered into the first primary ambulance provider macro ambulance system contract with MMR.

18. STAT appeared at the 2014 public meeting wherein the County entered into the five (5) year renewal of the primary ambulance provider macro ambulance system contract with MMR. At that time STAT contended for the first time that such a contract would violate the Sherman Anti-Trust Act.

19. The County approved the renewal of the primary services contract with MMR for an additional five (5) year period, rejecting STAT's contention that to do so would violate the Sherman Anti-Trust Act. See Exhibit C. It should also be noted that County leadership is

unaware of any township or local unit ever formally complaining to the County about MMR's ambulance response times in the original contract or in the renewal.

20. In 2016, the County adopted an Emergency Services Communication Ordinance ("Ordinance") that prohibits any ambulance company licensed in Saginaw County by the Saginaw Valley Medical Control Authority from operating within Saginaw County unless it obtains approval of the Saginaw County Board of Commissioners through contract or resolution (See Section 5.1). See Exhibit H.

21. The Ordinance enforces the macro-ambulance system established by the County through the primary services contract with MMR and the 911 Plan, as described above.

22. On August 2, 2016, STAT's counsel communicated to MMR and Saginaw County that their primary services contract violated the Sherman Anti-Trust Act and constituted an "unlawful restraint of trade." See Exhibit I.

23. On October 20, 2016, the County contacted STAT expressing its understanding that STAT "would either like to enter the ambulance market in Saginaw County or is already operating within the County" and advising that if this was true, the Ordinance required that STAT obtain approval of the County Board of Commissioners. See Exhibit J.

24. The County's correspondence also advised STAT that the County was intent on maintaining the benefits of its macro ambulance system, including its primary services contract with MMR, but would consider STAT's service requests in light of that contract.

25. On November 9, 2016, STAT's counsel responded to the County's correspondence denying that the County had any authority to regulate its operations. See Exhibit K.

26. On November 30, 2016, the County's counsel responded to STAT providing the authority under Michigan law for the County 911 Plan, the MMR Contract and the Ordinance. See Exhibit L.

27. On January 6, 2017, STAT communicated to the County that STAT expected the County to recognize STAT in its County 911 Plan despite the County's primary services contract with MMR. See Exhibit N. STAT's communication ignored the November 30, 2016 communication as if it were not sent.

28. On January 18, 2017, the County again communicated to STAT that it was committed to the MMR primary services contract, its County 911 Plan, and the Ordinance, and demanded that STAT suspend its ambulance activities in Saginaw County until such time as it requested a market—materially consistent with the MMR contract—that was approved by the County Board of Commissioners through contract or resolution. See Exhibit M.

29. Despite the County 911 Plan, the Ordinance, and the primary services contract between MMR and the County, STAT is providing ambulance services wholly within the County, including transport and EMS services to clients that it encourages to call it directly, without approval of the County Board of Commissioners.

30. Not only are such services by STAT violative of the County 911 Plan, the Ordinance, and the primary services contract between the County and MMR, it places public safety in jeopardy because the 911 Communications System is unaware of STAT's EMS activities and cannot coordinate other emergency services as well as hospital communications with first responders, including EMS providers.

31.     On information and belief, if STAT were to request a limited market within the County that was not materially inconsistent with the primary services contract with MMR, the County Board of Commissioners would consider approving the following by resolution: (1) clarifying that the primary services contract currently with MMR does not preclude STAT from taking EMS clients originating from counties other than the County to the two emergency trauma centers operated by the hospitals located within the County; (2) clarifying that the primary contract does not preclude STAT from taking transporting individuals from locations outside the County to a location in the County and vice versa; and/or (3) permitting STAT to provide intra-County transports if done pursuant to a multi-county contract.

32.     On information and belief, STAT is violating the County 911 Plan, primary ambulances services contract with MMR, and the Ordinance, through its actions described in Paragraph 29 above because—despite this Court's opinion in *Swartz* and STAT's own primary services contract with the City of Fenton—STAT claims primary services ambulance contracts are not authorized under Michigan law and, even if they were, STAT also claims that a primary services ambulance contract violates the Sherman Anti-Trust Act—despite the fact that no court in Michigan has so held and STAT has at least one such contract itself.

33.     The County disputes STAT's claims as described in Paragraph 32 above, and as such, there is a ripe, judiciable controversy between the parties on the legality and enforceability of the County 911 Plan, Ordinance and primary County/MMR contract under Michigan law and the Sherman Anti-Trust Act as described above.

34.     The facts as describe above are relatively uncontested and a declaratory judgment would terminate the controversy between the parties.

35.     The issues in this controversy involve legal questions important to the jurisprudence applicable in this State and to the public interest.

## COUNT I

### DECLARATORY JUDGMENT—THE COUNTY'S 911 PLAN, ORDINANCE, AND PRIMARY SERVICE CONTRACT WITH MMR ARE AUTHORIZED UNDER MICHIGAN LAW AND IF ENFORCED AGAINST STAT DO NOT VIOLATE THE SHERMAN ANTI-TRUST ACT

36.     The County incorporates by reference the allegations contained in Paragraphs 1 through 35 of its Complaint as if fully set forth herein.

37.     The County's 911 Plan is authorized under Michigan law, including but not limited to MCL §484.1101 et seq.

38.     The County's Ordinance is authorized under Michigan law, including but not limited MCL §333.20948(3) and MCL §46.11.

39.     The County's contract with MMR is authorized under Michigan law, including but not limited to MCL §333.20948(1).

40.     The enforcement of the County's 911 Plan, Ordinance or contract with MMR against STAT does not violate the Sherman Anti-Trust Act.

WHEREFORE, The County respectfully requests that this Court order the following relief:

A.  Declare that the County 911 Plan is legal and enforceable against STAT's unauthorized ambulance services originating within the County;

B.  Declare that the Ordinance is legal and enforceable against STAT's unauthorized ambulance services originating within the County, and that STAT has violated that Ordinance;

C.  Declare that the enforcement of the County's 911 Plan or Ordinance against STAT's unauthorized ambulance services originating within the County does not violate the Sherman Anti-Trust Act;

D. Enjoin STAT from providing ambulance services originating within the County without the authorization of the County Board of Commissioners through contract or resolution.

E. Award such other legal and equitable relief as is appropriate.

**SILVER & VAN ESSEN, P.C.**
Attorneys for Plaintiff County

Dated: January 27, 2017

By: /s/ Douglas W. Van Essen
_____
Douglas W. Van Essen (P 33169)
Lee T. Silver (P-36905)

BUSINESS ADDRESS & TELEPHONE
300 Ottawa Avenue N.W., Ste, 620
Grand Rapids, MI 49503
(616) 988-5600
dwv@silvervanessen.com
ltsilver@silvervanessen.com