# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SAGINAW COUNTY, a Michigan municipal corporation

Plaintiffs,

v.

STAT EMERGENCY MEDICAL SERVICE, INC., a Michigan for-profit corporation

Defendants.

Case No. 4:17-cv-10275
Hon. Terrence G. Berg

## OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION TO DISMISS (Dkt. 14)

## I.  Introduction

Saginaw County passed an ordinance in 2016 requiring anyone seeking to provide ambulance services in the county to first obtain the approval of the County Board of Commissioners. One ambulance company—licensed to provide ambulance services by the State of Michigan—went ahead and operated in the county without the Board's approval. Now the County ("Plaintiff" or "Saginaw") is suing that company, STAT Emergency Medical Services ("STAT" or "Defendant"), seeking a declaratory judgment that its ordinance is legal under state law and that enforcing it against Defendant would not violate the federal Sherman Antitrust Act (the "Sherman Act"). Saginaw County is a Michigan county

organized as a municipal corporation under Michigan law. STAT is a for-profit corporation that operates ambulance services throughout the state of Michigan, including within Saginaw County. STAT moved to dismiss the County's complaint. The Court heard oral argument on the motion to dismiss on May 2, 2018. For the reasons set out in detail below, that motion will be **GRANTED**.

## II.   Background

At the heart of this dispute lies the question: through what means can Saginaw County prevent a company from providing emergency services within its borders when that company has obtained authorization from the State of Michigan to provide such services throughout the State as well as medical oversight from the Saginaw County Medical Control Authority?

Plaintiff alleges that as early as 2009, it established a primary ambulance provider system as reflected through contracts with Mobile Medical Response, Inc. ("MMR"), another ambulance company. *See* Dkt. 10, Pg. IDs 216–18. Plaintiff's Emergency Services Communication Ordinance (the "Ordinance"), Dkt. 1, Ex. H, "enforces the macro-ambulance system established by the County through the primary services contract with MMR and the 911 plan." Dkt. 10, Pg. ID 219. Plaintiff maintains that its exclusive ambulance service contract with MMR was most recently renewed for another five-year term in 2013. *Id*; *see also* Dkt. 1, Ex. C (2013 Renewal). The contract with MMR provides in relevant part that,

"The COUNTY hereby designates [MMR] as the sole provider of mobile basic and advanced life support ambulance services for COUNTY during the term of this Agreement." Dkt. 1, Exhibit C, Pg. ID 29. According to Plaintiff, the County held public meetings prior to entering into the primary ambulance provider contract with MMR in 2009, and also before renewing the contract in 2013. Dkt. 10, Pg. ID 218. While STAT did not appear at the public meeting in 2009, Plaintiff alleges that STAT did appear at meetings held in September and October of 2013. *See id.*

According to Plaintiff, at the September 2013 meeting, counsel for STAT contended that the MMR contract would violate the Sherman Antitrust Act and the Due Process clause of the 14th Amendment to the United States Constitution. *Id.* Counsel for STAT also said it was prepared to initiate legal action against the County if it proceeded with the renewal, according to the Amended Complaint. Dkt. 10, Pg. ID 218. At another meeting in October 2013, Plaintiff claims that STAT's counsel and CEO appeared, "repeat[ing] their threats of Sherman Antitrust and 14th Amendment Due process claims and resolve to take legal action if the contract were renewed." Dkt. 10, Pg. ID 218. The County ultimately approved the renewal of the MMR contract. *Id.*; *See* Dkt. 1, Ex. C. Plaintiff maintains that STAT is providing ambulatory services in Saginaw County in contravention of Plaintiff's contract with MMR and its Ordinance.

Plaintiff adopted the Ordinance on April 19, 2016, at least in part to protect its primary services contract with MMR. Dkt. 1, Ex. H, Pg. IDs 89-94. Plaintiff alleges that the Ordinance works to enforce the system established by the County through the 911 Plan, yet the record suggests the referenced 911 Plan was adopted by the County on the same day as the Ordinance itself—April 19, 2016. Dkt. 1, Ex. G. This lawsuit primarily concerns Section 5.5 of the Ordinance, which provides that "No Person shall request, operate or provide ambulance service within the County that has not been approved by the Board through contract or resolution." Dkt. 1 Exhibit H, Pg. ID 94.

At the hearing on Defendant's motion to dismiss, both parties acknowledged that STAT is currently providing emergency services within the County in contravention of the Ordinance. STAT maintains that the Ordinance as written requires that it be licensed by a body which has no authority to license and is therefore not authorized or enforceable, as it conflicts with Michigan law. *See, e.g.,* Dkt. 17 Ex. A, Pg. ID 496.

## III. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief', in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests'." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). While a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion. *Id.*; *see also Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009), *cert. denied*, 558 U.S. 1111, 130 S. Ct. 1054, 175 L. Ed. 2d 883 (2010). A factual attack, on the other hand, is not a challenge to the sufficiency of the pleadings' allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, "no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994); *see also* 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2000) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence

has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

## IV. Analysis

Federal courts are not courts of general jurisdiction; rather, they have only the power that is authorized by Article III of the United States Constitution and statutes enacted by Congress. A plaintiff must have "constitutional standing" under Article III as well as statutory standing pursuant to a congressional grant in order to avail itself of a federal court's jurisdiction and power to adjudicate a particular case. These two sources together govern a federal court's subject matter jurisdiction. *See, e.g., Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986).

Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an "actual case or controversy" exists. *See* U.S. Const. art. III, § 2. That federal courts are confined by Article III to adjudicate only actual "cases" and "controversies" represents a fundamental limit on the federal judiciary's power. Thus, "the threshold question in every federal case is whether the court has the judicial power to entertain the suit." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 709 (6th Cir. 2015) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 279 (6th Cir.1997)). Under Article III, courts are required to "avoid issuing advisory opinions based upon hypothetical situations." *Briggs v. Ohio Elections Comm'n,* 61 F.3d 487, 493 (6th Cir. 1995). The case or controversy requirement works to ensure federal

courts do not render advisory opinions or consider hypothetical or abstract questions.

Courts have explained the case or controversy requirement through a series of "justiciability doctrines," such as the standing doctrine. *See Nat'l Rifle Ass'n of Am. v. Magaw,* 132 F.3d 272, 279 (6th Cir. 1997). Standing concerns a plaintiff's ability to sue, requiring that a litigant must have suffered an injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Another doctrine which "cluster[s] about Article III" is ripeness. *Peoples Rights Org., Inc. v. City of Columbus,* 152 F.3d 522, 527 (6th Cir. 1998) (citing *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178–79 (D.C. Cir. 1982) (Bork, J., concurring.). Where standing concerns a plaintiff's *ability* to sue, ripeness focuses on the *timing* of the action. The ripeness doctrine buttresses Article III's case and controversy requirement by "prevent[ing] the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Rifle Ass'n,* 132 F.3d at 284 (citing *Thomas v. Union Carbide Agric. Prod. Co.,* 473 U.S. 568, 580 (1985)). Thus, the ripeness doctrine prevents courts from handling cases that have not yet matured into full-blown disputes, thereby ensuring federal courts do not issue opinions advising what the law would be upon a hypothetical set of facts.

In this action, Plaintiff seeks relief pursuant to the Declaratory Judgment Act (the "Act"). *See* Dkt. 10. The Act provides in relevant part: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act's "actual controversy" requirement is coextensive with Article III's constitutional limits, and necessarily includes the standing and ripeness doctrines from Article III as well. *See Fieger v. Mich. Sup. Ct.,* 553 F.3d 955, 961 (6th Cir. 2009). Thus, the Act's "case of actual controversy" requirement refers to the type of cases and controversies that are justiciable under Article III of the U.S. Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (citing *Aetna Life Ins. v. Haworth,* 300 U.S. 227, 240 (1937)).

To determine whether parties have an actual case or controversy as required under the Act (and Article III), courts must ask whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Commodities Export Co. v. Detroit Int'l Bridge Co.,* 695 F.3d 518, 525 (6th Cir. 2012); *MedImmune,* 549 U.S. at 127. Framed another way, the dispute between the parties must be "definite and concrete, touching on the legal relations of parties having adverse legal interests and be real and substantial and admit of specific relief through a

decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *See Kreinberg v. Dow Chemical Co.,* 2007 WL 2782060 at *9 (E.D. Mich. Sept. 24, 2007) (citing *Medimmune, Inc.,* 549 U.S. at 127).

Critically, the Act only provides a procedural mechanism; it does not independently confer a federal court with subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 671–72 (1950). Thus, an action can be maintained under the Declaratory Judgment Act only if a plaintiff has an independent basis to invoke a federal court's subject matter jurisdiction. *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n., Inc.,* 287 F.3d 568, 575 (6th Cir. 2002) ("It is well-settled that the Declaratory Judgment Act cannot serve as an independent basis for federal subject matter jurisdiction.") (internal citations omitted). In this action, Plaintiff alleges federal question jurisdiction, federal antitrust jurisdiction, and supplemental jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, respectively.

The Court notes that Plaintiff's case presents somewhat of an atypical posture for a declaratory judgment action. Typically, a plaintiff that seeks declaratory relief surrounding the enforceability of a particular law or statute uses the declaratory judgment act as a shield, in an attempt to protect itself from injuries it has or will suffer if the challenged law is

enforced against it.[1] In the present case, however, Plaintiff maintains that: 1) it has created a regulatory regime pursuant to the powers given to it by the Michigan legislature regarding the provision of emergency services within its County, 2) Defendant is engaging in activities in violation of that regime, and 3) Plaintiff has been harmed by Defendant's noncompliance. *See generally,* Dkt. 10. Plaintiff's Amended Complaint requests this court to:

1. Declare that the County's 911 Plan and primary services ambulance contract [with MMR] are legal and enforceable against STAT's unauthorized ambulance services originating within the County;

2. Declare that the Ordinance is legal and enforceable against STAT's unauthorized ambulance services originating within the County, and that STAT has violated that Ordinance;

3. Declare that the enforceability of the County's 911 Plan or Ordinance against STAT's unauthorized ambulance services originating within the County does not violate the Sherman Anti-Trust Act or the Due Process clause of the 14th Amendment; and

---

[1] For instance *Nat'l Rifle Ass'n* involved the pre-enforcement challenge to the constitutionality of Title XI of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103-22, 108 Stat. 1796 (1994) (the "Crime Control Act"). *Nat'l Rifle Ass'n,* 132 F.3d at 272. The Crime Control Act prohibited for a period of ten years the manufacture, transfer, or possession of semi-automatic weapons and the transfer or possession of large capacity ammunition feeding devices. *Id.* at 277. One group of Plaintiffs, manufacturers and dealers of firearms, alleged that the passage of the Crime Control Act had a significant impact on the way they conducted their businesses and that compliance with the legislation caused them immediate economic harm. The Sixth Circuit concluded that the declaratory judgment act provided a procedural mechanism for these Plaintiffs to bring their claim because "the federal court is not asked to decide a case involving conjectural or hypothetical injury, but one that creates substantial economic hardship, which is direct and immediate, and will be compounded by a refusal of the court to intervene prior to enforcement of the statute." *Nat'l Rifle Ass'n,* 132 F.3d at 287.

4. Enjoin STAT from providing ambulance services originating within the county without the authorization of the County Board of Commissioners through contract or resolution.

*See* Dkt 10, Pg. IDs 222–23.

Despite the atypical nature of Plaintiff's action, the Act nevertheless provides a mechanism for the pre-enforcement review of a statute; and, while the Act does not on its face differentiate between its use as a "sword" versus a "shield," Plaintiff faces different hurdles in satisfying the necessary Article III and statutory standing requirements to establish subject matter jurisdiction. The Court begins by addressing its power under Article III to hear this case.

## A. Plaintiff's Alleged Injuries in Fact

The Court begins its analysis with "[p]erhaps the most important" of the justiciability doctrines: whether Plaintiff has standing to invoke the jurisdiction of the federal Courts. *See Nat'l Rifle Ass'n*, 132 F.3d at 279. Standing concerns a plaintiff's ability to sue, and turns on whether he or she has suffered a concrete injury inflicted by a defendant. The Supreme Court has enumerated the following elements necessary to establish standing:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Plaintiff's Amended Complaint alleges that STAT's provision of emergency services in Saginaw County without authorization from the Board of Commissioners has injured Plaintiff because STAT's behavior violates the Plaintiff's 911 Plan and Ordinance, undermines the primary services contract it has with MMR, and "places public safety in jeopardy because the 911 Communications System is unaware of STAT's EMS activities and cannot coordinate other emergency services as well as hospital communications with first responders, including EMS providers." *See* Dkt. 10, Pg. ID 220–21. Plaintiff maintains its emergency services regime was created pursuant to the power conferred on it by Michigan law, and seeks declarations from this Court stating as much. *See id.* at 222–23. However, Plaintiff does not only seek declaratory relief concerning the validity of its emergency services regime under Michigan law. Plaintiff also requests declarations that the enforcement of the County's emergency services regime against STAT's alleged unauthorized ambulance services originating within the County would not violate the Sherman Act or the Due Process Clause of the 14th Amendment to the United States Constitution. *See* Dkt. 10, Pg. ID 222. As to this request for declaratory relief, however, Plaintiff does not allege any injuries arising from a

failure to declare whether the enforcement of the Ordinance violates the Due Process Clause of the 14th Amendment or the Sherman Act.

Courts recognize that declaratory judgments are often sought before a completed injury-in-fact has occurred; this does not prevent a plaintiff from suing under the Declaratory Judgment Act. *Nat'l Rifle Ass'n,* 123 F.3d at 279. However, a federal court's power under Article III—and thus its subject matter jurisdiction to hear a case—is still limited to the resolution of "actual controversies" even when no injury-in-fact has yet occurred. *See id.* Thus, Plaintiff must show that the parties have an actual controversy as to its Sherman Act and Due Process Clause claims to establish that this Court has subject matter jurisdiction over those claims.

The Supreme Court has explained that while the difference between an abstract question and a case or controversy is one of degree, not discernable by any precise test, the basic inquiry is whether "the conflicting contentions of the parties . . . present a real, substantial controversy between the parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297-98 (1979). Furthermore, to determine whether a plaintiff has *standing* to adjudicate an "actual controversy" requisite for relief under the Declaratory Judgment Act, a court must ask whether the parties have "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment even

though the injury-in-fact has not yet been completed." *See, e.g., Nat'l Rifle Ass'n,* 132 F.3d at 280 (internal citations omitted). These principles guide this Court's analysis as to whether, with respect to Plaintiff's claims for relief under the Sherman Act and the Due Process Clause of the 14th Amendment, Plaintiff has sufficiently alleged an actual controversy.

As will be explained, the Court finds that Plaintiff has failed to satisfy its burden of establishing that the parties have an actual controversy surrounding Plaintiff's Sherman Act Claim, that Plaintiff's alleged Sherman Act claim is ripe for adjudication, and that Plaintiff has standing to pursue its alleged claim for relief under the Due Process Clause of the 14th Amendment. Accordingly, the Court cannot exercise jurisdiction over Plaintiff's case because all of Plaintiff's claims that could support this Court's subject matter jurisdiction must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## B. Plaintiff's Claim for Relief Pursuant to the Sherman Act

### 1. Whether An Actual Controversy Exists as to Plaintiff's Sherman Act Claim in the Absence of an Alleged Injury

Plaintiff makes three factual allegations in support of its argument that the parties have an actual controversy under the Sherman Act in this case:

a) at two meetings in 2013, STAT allegedly threatened federal litigation against Plaintiff for violation of antitrust laws;

b) on August 2, 2016, STAT's legal counsel sent a letter to MMR's legal counsel which Plaintiff maintains included an

allegation by STAT that the County's primary services contract with MMR violates the Sherman Antitrust Act; and

c) during the meet and confer process between counsel for this current lawsuit, STAT's counsel made representations that demonstrate the parties have an actual controversy under the Sherman Act;

*See generally,* Dkts. 10, 19. The Court will address each argument in turn below, weighing whether Plaintiff's allegations are sufficient to show the parties have an actual controversy surrounding its Sherman Act claim that would confer subject matter jurisdiction. *See, e.g., Ritchie,* 15 F.3d at 598 (explaining that the Court may weigh the factual existence of subject matter jurisdiction when faced with a factual attack under 12(b)(1)).

### a) STAT's Alleged Threats at Board Meetings Held in 2013

First, Plaintiff alleges that in September 2013, counsel for STAT attended a Saginaw County Board of Commissioners meeting where the Board addressed whether to renew a "primary ambulance provider macro ambulance system contract" with MMR—essentially, a contract that provided MMR the exclusive right to perform certain emergency services within the county. *See* Dkt. 10, Pg. ID 218. Plaintiff insists that at the September 2013 meeting, STAT representatives asserted that the prospective exclusive contract between the County and MMR would violate the Sherman Antitrust Act and that STAT was prepared to initiate legal action against the County if it were to proceed with the contract. *See id.* According to Plaintiff, STAT's alleged threat amounted to "assert[ing]

15

federal claims" against the County. *See* Dkt. 17, Pg. ID 483. Plaintiff also alleges that one month later, in October 2013, STAT's counsel and CEO appeared at a separate Board of Commissioners meeting and "repeated their threats of Sherman Anti-Trust and 14th Amendment Due process claims and resolve to take legal action if the contract were renewed." Dkt. 10, Pg. ID 218. Plaintiff claims the aforementioned interactions reflect an actual controversy between the parties, and also one that "arises under" the Sherman Act for purposes of 28 U.S.C. § 1331. *See* Dkt. 10, Pg. IDs 218–19.

Upon reviewing the factual bases for Plaintiff's claims, the Court finds that the materials submitted by Plaintiff are insufficient to support its allegations that STAT threatened antitrust action at the meetings held in September and October 2013. *See Ritchie,* 15 F.3d at 598. The clerical notes filed and cited to by Plaintiff do not record any statements by STAT threatening antitrust litigation at the September 2013 Board of Commissioners meeting. *See* Dkt 17-1, Pg. ID 501. Instead, the notes, partially reproduced below, show that Derek Wilczynski, counsel for STAT, referenced "Constit,[*sic*] equal protection" and "SVMCA [Saginaw Valley Medical Control Authority] – potential severe const." in connection with "no other [ambulance] provider being given [opportunity]" to work in Saginaw county. *See id.*



Dkt. 17-1, Pg. ID 501.

The official minutes and associated clerical notes from the September 2013 meeting suggest STAT's counsel raised issues expressly relating to potential Constitutional violations by the SVMCA, not Plaintiff Saginaw County. *Id.* Notably absent is evidence that STAT threatened to bring any antitrust claims, or directed any "threats" at the Plaintiff.[2]

The same is true for Plaintiff's allegations surrounding the October 2013 meeting before the Board of Commissioners. While Plaintiff insists that STAT's counsel "repeated" threats to bring a federal antitrust action, the clerical notes only show that counsel for STAT "spoke in opposition

---

[2] The Court notes that since *MedImmune*, a declaratory judgment plaintiff is not required to show that a defendant threatened litigation to establish an actual controversy under the Act. However, proof of such a threat is nevertheless evidence that weighs in favor of proving the existence of an actual controversy under the governing test, which asks whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See MedImmune*, 549 U.S. at 127.

to the county entering into an Ambulance Service Agreement with Mobile Medical Response, Inc. (MMR). He appealed to the Board to open this matter to bidding to promote competition and create more access to healthcare. . . ." *See* Dkt. 14–6, Pg. ID 2.

Furthermore, it is significant that Plaintiff is seeking declaratory relief concerning the enforceability of an Ordinance that was adopted on April 19, *2016*—almost three years *after* the Board of Commissioners meetings that took place in September and October of 2013. *See* Dkt. 1 Ex. H, Pg. ID 89. The record also shows that the governing 911 Plan was adopted by the County on the same day as the Ordinance, April 19, 2016. *See* Dkt. 1, Ex. G. The considerable gap in time between the allegedly threatening statements by STAT's counsel at the 2013 meetings (which are not well supported) and the adoption of the 911 Plan and Ordinance in 2016 undermines the strength of any conclusion that: 1) the parties have a "definite and concrete" federal antitrust dispute sufficient to satisfy the actual controversy requirement under the Act, and 2) the parties have an actual controversy that is sufficiently immediate and real to confer Plaintiff with standing to seek relief under the Sherman Act against STAT. *See Commodities Exp.*, 695 F.3d at 525. Thus, in weighing the above facts, the Court finds that the records of the September and October 2013 meetings (which took place almost 4 years before Plaintiff filed the instant case, no less) fail to demonstrate that the parties have a sub-

stantial Sherman Act controversy that is definite and concrete and of sufficient immediacy and reality to warrant the issuance of declaratory relief. *See id.*

### b) STAT's Counsel's Letter to Mr. Van Essen

Second, Plaintiff alleges that STAT communicated to MMR and Saginaw County that their primary services contract violates the Sherman Antitrust Act. *See* Dkt. 10, Pg. ID 219, ¶ 24 (citing Dkt. 1, Ex. I); *see also* Dkt. 17, Pg. ID 485. Plaintiff points to a letter from STAT's counsel to Attorney Douglas Van Essen as proof of an actual controversy between the parties arising under the Sherman Act. *See id.* At the time the letter was sent, this case had not yet been brought, and Van Essen was at that time counsel for MMR.

The record shows that counsel for STAT sent the letter in question in connection with STAT's partial victory in *STAT v. SVMCA,* Case No. 13-cv-14960, 2016 WL 3902742 (July 19, 2016, E.D. Mich. 2016). *See Dkt.* 1 Ex. I, Pg. ID 96. Moreover, the letter was directed to Mr. Van Essen's then-client, MMR, and discussed issues related to the disposition of that previous case. *See id.* In the letter, STAT's counsel states that the letter serves as a follow-up to an earlier cease-and-desist letter sent to MMR. *Id.* Notably, the letter identifies certain activities undertaken *by MMR*—not the Plaintiff in this case—that STAT's counsel argued might fall within the ambit of the Sherman Act. For example, the letter states, "[MMR's] repeated and ongoing attempts to conspire not only with the

SVMCA, but others, for the purpose of limiting competition in the Saginaw and Tuscola County area is precisely what is prohibited by the Sherman Anti-Trust Act." Dkt. 1 Ex. I, Pg. ID 98. But the letter does not state that Plaintiff in this action has violated the Sherman Act. Rather, the letter reflects one private company's perspective that another private company was engaged in anticompetitive conduct regarding the provision of emergency services in Saginaw County. Consequently, the August 2, 2016 letter fails to provide evidence sufficient to support a finding that STAT and Saginaw County have a dispute arising under the Sherman Act that is sufficiently definite and concrete to satisfy the "actual controversy" requirement under Article III and the Declaratory Judgment Act.

### c) Meet and Confer Email Communications

Third, Plaintiff points to emails with Defense counsel exchanged as a part of their "meet and confer" obligations. Plaintiff argues that "STAT expressly asserted that if Saginaw County's purpose in enacting the Ordinance and then enforcing it in this lawsuit is to protect MMR's exclusive territorial rights as conferred in [the exclusive contract], then STAT believes the Ordinance violates the Sherman Antitrust Act." Dkt. 17, Pg. ID 475–76 (citing Dkt. 17-1, Pg. ID 495).

In the referenced emails, counsel for Plaintiff informed STAT's counsel that it would "stipulate to a dismissal if you agree in the stipulation that STAT is formally withdrawing its claim that the Ordinance is

unenforceable because it interferes with STAT's rights under the Sherman Anti-Trust Act." Dkt. 17 Ex. A, Pg. ID 495. Plaintiff's position on the Sherman Act issue in this case is also reflected in its Amended Complaint, where it alleges that "STAT claims primary services ambulance contracts . . . violate[] the Sherman Anti-Trust Act" and that "[t]he County disputes [these] claims . . . and is resolved to enforce the [Ordinance]. Dkt. 10, Pg. ID 221.

Of course, as of yet STAT has not brought a lawsuit or filed any counterclaims against Plaintiff challenging Plaintiff's emergency services regime under the Sherman Antitrust Act. Nor does the evidence in the record support Plaintiff's allegation that STAT claims primary services ambulance contracts violate the Sherman Act. What the record shows is that STAT has stated that it believes the *enforcement* of the *Ordinance* in a certain way and for particular reasons might give rise to federal antitrust concerns. *See* Dkt. 17-1, Pg. ID 495. In its email exchange during the meet-and-confer process, counsel for STAT explained its position on the Ordinance and this pending lawsuit as follows: "[w]e are not alleging that the Ordinance itself violates the Sherman Antitrust Act. Enforcement of the ordinance, however, if done to protect MMR, to the exclusion of other ambulance providers, would violate the Sherman Antitrust Act . . ." *Id.* At the hearing on Defendant's motion to dismiss,

Plaintiff acknowledged that it has not yet taken steps to enforce the Ordinance according to its terms.[3] While the Court acknowledges that the Declaratory Judgment Act serves as an alternative to a party committing arguably-illegal activity, a Plaintiff must still present the Court with a controversy that is definite and concrete—"as distinguished from [seeking] an opinion advising what the law would be upon a hypothetical state of facts." *See MedImmune,* 549 U.S. at 127.

Plaintiff's allegations in its Amended Complaint, its representations through the parties' meet-and-confer email exchanges, and its briefing before this Court show that Plaintiff believes STAT may challenge the County's emergency services regime through a federal antitrust lawsuit at some point in the future.[4] Plaintiff in this action seeks a determination as to whether the federal antitrust law would be violated *if* Plaintiff "enforced" its Ordinance against STAT and what the result would be

---

[3] Notably, the Ordinance itself contains enforcement provisions that allow the County to issue "appearance ticket[s]" as well as civil and criminal penalties. *See* Dkt. 1 Ex. H, § 4.5.2–4.5.3. While both parties recognize that STAT has and continues to provide emergency services in the County in violation of the Ordinance, no evidence suggests that the County or the County's agents have taken steps to enforce the Ordinance according to its terms. At the hearing on Defendant's motion to dismiss, counsel for Plaintiff acknowledged that the only "enforcement action" purportedly undertaken by Plaintiff involved the sending of a letter on January 18, 2017 to Defendant indicating that "STAT cannot continue to . . . violate the Ordinance and provide either intra-county transport or EMS ambulance services within Saginaw County in defiance of the Ordinance . . . ." *See* Dkt. 1 Ex. 1, Pg. ID 119.

[4] Plaintiff has made several arguments, statements, and references throughout this litigation to this effect. *See, e.g.,* Dkt. 17, Pg. ID 485 ("It is obvious that STAT is simply hoping to clear this case out of the way and initiate its own Sherman Antitrust and 14th Amendment due process claims against the County with a preferred judge.").

if STAT challenged Plaintiff's enforcement on federal antitrust grounds. But neither of these events have occurred. The Court rejects Plaintiff argument that its mere bringing of this lawsuit, given the nature of the parties' relationship, presents an actual Sherman Act controversy because of the position articulated by STAT's counsel during their meet-and-confer communications. Dkt. 17, Pg. ID 476.

In sum, the Court finds that "all of the circumstances" surrounding Plaintiff's Sherman Act claim fail to show an "actual controversy" between the parties regarding this claim. *See MedImmune,* 549 U.S. 127; *Nat'l Rifle Ass'n,* 132 F.3d at 279–81. Rather, the circumstances show that the parties have mere hypothetical and abstract questions surrounding the applicability of the Sherman Act to potential future conduct. Given this posture, the Court finds that, with respect to Plaintiff's Sherman Act claim, Plaintiff seeks from the Court "an opinion advising what the law would be upon a hypothetical state of facts"—relief that lies outside the scope of this Court's Article III powers.[5] *See id.* For these reasons,

---

[5] The Court notes that the parties' meet-and-confer emails show that the parties appear to have a definite and concrete controversy surrounding whether the Ordinance is authorized under Michigan law. Counsel for STAT states that "[t]he ambulance ordinance, as currently written, requires STAT to be 'licensed' by a body which has no authority to license," and expressed an opinion that "there is no way that the [Ordinance] is authorized or enforceable." Dkt. 17-1, Pg. ID 496. This issue presents purely questions of Michigan law, however, the answers of which may very well render superfluous the hypothetical antitrust issues that currently dwell on the fringes of obscurity between the parties.

the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims surrounding the Sherman Act.

### 2. Whether Plaintiff's Sherman Act Claim is Ripe for Adjudication

Defendant also argues that Plaintiff's case must be dismissed because the issues presented in the complaint are not ripe for review. *See* Dkt. 14, Pg. IDs 420–22. Courts apply the ripeness doctrine to evaluate whether it may exercise its judicial power over a dispute. The ripeness doctrine is a mixture of Article III concerns about actual cases and controversies and prudential concerns about the appropriate time for a court to adjudicate a matter. The "basic rationale of the ripeness doctrine is 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Nat'l Rifle Ass'n*, 132 F.3d at 284 (citing *Thomas v. Union Carbide Agric. Prod. Co.,* 473 U.S. 568, 580 (1985)). While the record is sufficient to conclude that the parties do not have an "actual controversy" surrounding the Sherman Act, application of the ripeness doctrine also requires a finding that this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claim regarding the Sherman Act.

The Sixth Circuit has stated that evaluating whether a suit is ripe requires courts to weigh: 1) the hardship to the parties if judicial relief is denied at the pre-enforcement stage in the proceedings; 2) the likelihood that the harm alleged by plaintiffs will ever come to pass; and 3) whether

the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims. *See Nat'l Rifle Ass'n*, 132 F.3d at 284. All of these factors support a finding that Plaintiff's Sherman Act claim is not ripe for adjudication: STAT has not filed suit against Saginaw County, nor has it alleged that the Ordinance at issue violates federal antitrust laws. Plaintiff has not fined, ticketed or otherwise taken efforts to sanction STAT for violating the Ordinance, as permitted under the Ordinance. Nothing prevents Plaintiff from enforcing its Ordinance against STAT for its alleged unauthorized activities in the County, and Plaintiff has not sufficiently identified a hardship to the parties if judicial relief is denied at this stage, or that the likelihood of harm alleged by Plaintiffs by denying relief will ever come to pass.[6]

At the hearing on Defendant's motion to dismiss, Plaintiff highlighted the possibility that STAT will bring a federal antitrust case against it in response to its efforts to enforce the Ordinance, which could

---

[6] As noted above, the posture of Plaintiff's case in this action is vastly different from plaintiffs in declaratory judgment cases presenting ripe, actual controversies. *Nat'l Rifle Ass'n* and *MedImmune* are instructive. In *Nat'l Rifle Ass'n*, a set of plaintiffs alleged that the passage of a statute had a significant impact on the way they conducted their businesses and indicated that their compliance with the statute caused them immediate harm. *Nat'l Rifle Ass'n,* 132 F.3d at 281. Similarly, *MedImmune* considered a plaintiff that sought relief under the Act based on its desire to stop making royalty payments pursuant to a licensing agreement. *MedImmune*, 549 U.S. at 121. The plaintiff faced two choices: 1) continue to make the payments, even though plaintiff believed it had the right to stop making the payments, or 2) stop making the payments and face imminent civil litigation. *Id.* at 122. In *MedImmune*, the risk of a civil suit was certain and imminent because the Defendant expressed its intent to sue the plaintiff for violating the agreement if it stopped making the royalty payments. *Id.*

lead to prolonged federal antitrust litigation. This sentiment is echoed throughout Plaintiff's pleadings and briefing. As an initial matter, it is not clear that Plaintiff's efforts to enforce the Ordinance, whatever they might be, would lead to STAT initiating a federal antitrust lawsuit against Plaintiff. If confronted with sanctions, STAT could very well adapt its behavior; there is no way for the Court to know what might happen. Plaintiff's suit nevertheless seeks a declaration of what the law would be if the County were to undertake enforcement activity against STAT and STAT were to respond by filing an antitrust lawsuit against it. But, even assuming for a moment that such an enforcement action may take place in the future, to be ripe, a suit seeking a declaratory judgment must allege what harm the defendant would suffer from the denial of judicial relief right now. The prospect of protracted federal antitrust litigation is no more diminished if it is pursued in this litigation than through a subsequent action brought based on a ripe and actual controversy. For these reasons, the Court finds that parties will suffer little hardship if judicial relief is denied at this stage and further that, based on the record to date, it is unclear whether the harm alleged by Plaintiffs will ever come to pass.

Moreover, the Court also finds that the factual record is not sufficiently developed to produce a fair adjudication of the merits of Plaintiff's claims. The Court finds significant the fact that this case is one where Plaintiff seeks a judgment that prospective as-yet uncommitted conduct

*would not* violate the Sherman Act, as opposed to one where a plaintiff advances an affirmative allegation that certain completed conduct amounts to a Sherman Act violation. The conduct that serves as the foundation for Plaintiff's desired relief under the Sherman Act—the enforcement of the ordinance—*has not yet occurred*. The Court would be required to speculate about the nature of Plaintiff's hypothetical enforcement actions and their impact.

Furthermore, if Plaintiff were able proceed with its suit for a declaratory judgment concerning the Sherman Act, STAT would be forced to either take the role of a putative antitrust plaintiff who filed an affirmative Sherman Act claim (thereby likely requiring STAT to *prove* that certain conduct reflects a Sherman Act violation, when it has not actually advanced such an allegation), or potentially be subject to a *res judicata* finding against it. Additionally, adjudicating Plaintiff's Sherman Act claim would require the Court to speculate on multiple issues of fact in the complex arena of is federal antitrust law. But, given the Court's finding in this Order, this case lacks a definite and concrete dispute over whether an antitrust violation has occurred. The Court finds that "forcing" a defendant to take the role of a putative plaintiff in a federal antitrust lawsuit when it has not initiated such an action does not represent a "fair adjudication on the merits" of the parties' alleged antitrust disagreement.

Thus, for the reasons explained in detail above, the Court finds that Plaintiff's Sherman Act claim is not ripe for adjudication.

### 3. Alternatively, Plaintiff's Sherman Act Claim is Subject to Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

While the record is sufficient to dismiss Plaintiff's Sherman Act claim for lack of subject matter jurisdiction, even if the Court had jurisdiction over Plaintiff's Sherman Act claim, it is subject to dismissal for its failure to sufficiently state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Plaintiff in this action seeks, *inter alia*, a declaration that the County's 911 Plan, the Ordinance, and its primary services contract with MMR, if enforced against STAT, do not violate the Sherman Act. But Plaintiff's Amended Complaint alleges no factual content that would allow the Court to plausibly infer that it is entitled to such relief.

Section 1 of the Sherman Act makes unlawful "every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Section 2 of the Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Despite several references to its primary services contract with MMR, Plaintiff's Amended Complaint alleges no facts as to why its primary services contract does not reflect an unlawful restraint of trade, and therefore passes muster under § 1. The

same issue plagues Plaintiff's pleading vis-à-vis its 911 Plan and the Ordinance. While Plaintiff alleges that the 911 Plan and Ordinance were passed pursuant to state authority, (and that the Ordinance was passed in part to protect Plaintiff's contract with MMR) the Amended Complaint fails to allege any facts to show that the 911 Plan and the Ordinance do not violate the Sherman Act. For instance, Plaintiff alleges no facts to indicate its method of permitting primary emergency service providers does not amount to a contract or conspiracy that unlawfully restrains trade. Plaintiff's Amended Complaint similarly fails to allege any facts to plausibly show it is entitled to a declaration that its 911 Plan, the Ordinance, and the contract with MMR do not violate Section 2 of the Sherman Act.

For these reasons, the Court finds that Plaintiff's Amended Complaint, Dkt. 10, fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that" plausibly shows it is entitled to relief on its Sherman Act claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 278 (2008). Thus, even if the Court had subject-matter jurisdiction over Plaintiff's Sherman Act claim, it would be subject to dismissal. Fed. R. Civ. P. 12(b)(6); *Twombly,* 550 U.S. at 555.

## C. Plaintiff's Claim for Relief Pursuant to the Due Process Clause of the 14th Amendment

Plaintiff also seeks relief pursuant to the Due Process Clause of the 14th Amendment to the United States Constitution (the "Due Process

Clause claim"). Plaintiff requests a declaration that the enforcement of its 911 Plan or Ordinance against STAT's unauthorized ambulance services origination within the County would not violate the Due Process Clause of the 14th Amendment. Dkt. 10, Pg. ID 222. Plaintiff provides more clarity on this claim in its response to STAT's motion to dismiss. In its response, Plaintiff states that STAT's motion to dismiss, "demonstrates the existence of a federal case and controversy between the parties; namely whether the County's Ordinance violates STAT's federal constitutional rights." Dkt. 17, Pg. ID 475.

A brief history of the parties' pleadings in this matter provides helpful context to Plaintiff's Due Process Clause claim. Plaintiff filed its first Complaint in this case on February 1, 2017. Dkt. 1. Absent from Plaintiff's initial Complaint was a request for a declaration that its 911 Plan and Ordinance did not violate the Due Process Clause of the Fourteenth Amendment. *See* Dkt. 1. STAT filed its motion to dismiss Plaintiff's initial complaint on April 3, 2017. Dkt. 9. STAT argued that Plaintiff's case must be dismissed for lacking subject matter jurisdiction and, in the alternative, that the Complaint should be dismissed because the Ordinance violates the Due Process Clause of the U.S. Constitution. *See* Dkt. 9, Pg. IDs 175–78. Plaintiff filed its Amended Complaint less than two weeks later on April 14, 2017 and included for the first time its request for a declaration that the 911 Plan and Ordinance do not violate the Due Process Clause. *See* Dkt. 10, Pg. ID 222.

Thus, it appears to the Court that Plaintiff reframed an argument advanced by Defendant in defense to Plaintiff's claims in its original Complaint, and subsequently pled an affirmative claim for relief on the same issue in its Amended Complaint. That is to say, where STAT argued that Plaintiff's ordinance violates its rights under the Due Process Clause, Plaintiff's Amended Complaint seeks a declaration that its 911 Plan and Ordinance, if enforced against STAT, would not violate rights guaranteed to STAT by, and protected under, the Due Process Clause. As described in further detail below, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claim on this issue.

1. **Plaintiff Lacks Standing to Bring its Due Process Clause Claim**

Plaintiff fails to allege and show the fundamental elements necessary to establish it has standing to bring its Due Process Clause claim. Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61. Plaintiff in this action has failed to identify any "injury in fact" to rights that is has which are protected under the Due Process Clause; it has not pointed to any behavior that is "fairly traceable" to STAT's conduct that led to the alleged violation of its rights protected under the Due Process Clause; and it fails to identify how the injury that it fails to allege vis-à-vis the Due Process Clause would be redressed by

the requested relief. While Plaintiff is not prohibited from defending itself against a defense, counterclaim, or challenge by STAT that the enforcement of its Ordinance, as applied to STAT, violates STAT's rights as protected under the Due Process Clause, Plaintiff has not established that it has standing itself to seek relief as to this issue on an affirmative claim.

### 2. Alternatively, Plaintiff's Due Process Clause Claim Would be Subject to Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

Even if Plaintiff had standing to raise the Due Process Clause claim alleged in its Amended Complaint, the claim would be subject to dismissal for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6). While plaintiffs are required to only provide "a short and plain statement of the claim showing that it is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555, Plaintiff fails to allege any facts plausibly showing it is entitled to relief under the Due Process Clause of the 14th Amendment. Thus, Plaintiff's Amended complaint fails to allege facts to plausibly show it is entitled to a declaration that the enforcement of its 911 Plan and Ordinance against STAT does not violate STAT's rights as protected under the Due Process Clause of the U.S. Constitution, and would therefore be subject to dismissal. *See Twombly,* 550 U.S. at 555.

## D. The Court Lacks Subject Matter Jurisdiction Over this Action

As explained in detail above, in order to invoke this Court's subject matter jurisdiction, Plaintiff must establish it has constitutional standing pursuant to Article III as well as statutory standing through a congressional grant. *Bender,* 475 U.S. at 541. Plaintiff alleges federal question jurisdiction, federal antitrust jurisdiction, and supplemental jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, respectively.

Because Plaintiff's claim for relief under the Sherman Act must be dismissed for: 1) failing to raise a sufficient "actual controversy" for purposes of Article III and the Declaratory Judgment Act, and 2) lacking sufficient ripeness, the claim must be dismissed and cannot establish the Court's subject matter jurisdiction over this action. *See Loren v. Blue Cross & Blue Shield of Mich.,* 505 F.3d 598, 606 (6th Cir. 2007) ("If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction."). The Court's subject matter jurisdiction, if it exists in this case, must lie elsewhere.

Plaintiff's claim for relief under the Due Process Clause similarly fails to establish this Court's subject matter jurisdiction because Plaintiff does not have standing to bring the claim. Plaintiff's Due Process Clause claim therefore *also* cannot establish this Court's subject matter jurisdiction pursuant to 28 U.S.C § 1331 because a federal question must be presented on the face of a plaintiff's well-pleaded complaint—not a defense

or allegations in the complaint that anticipate a defense. *See Caterpillar v. Williams*, 482 U.S. 386 (1987). Plaintiff's Due Process Clause claim represents the only remaining federal question arguably at issue in the Amended Complaint, but it cannot establish this Court's federal question jurisdiction because it "is interjected into this lawsuit solely as a defense to [defendant's] defense to [Plaintiff's] . . . claim." *See Michigan Southern R.R. Co. v. Branch & Joseph Counties Rail Users Ass'n., Inc.*, 287 F.3d 568, 575 (6th Cir. 2002) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667).

Moreover, federal jurisdiction in this action cannot be premised on *STAT's* argument or claim in its motion to dismiss that the Ordinance violates its rights as protected under the Due Process Clause. It is well-settled that *counterclaims* and *defenses* that arise under federal law are inadequate to confer federal question jurisdiction; the federal question must appear "on the face" of the plaintiff's well-pleaded complaint. *See, e.g., Merrell Dow*, 478 U.S. at 808 (1986) ("A defense that raises a federal question is inadequate to confer federal [question] jurisdiction."); *Chase Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 914–15 (6th Cir. 2007). Thus, because federal question jurisdiction must exist on the face of Plaintiff's well-pleaded complaint in this action, the Court will not entertain arguments which seek to establish federal question jurisdiction based on Defendant's asserted defenses in this action. *See id.*

Plaintiff also alleges the Court has supplemental jurisdiction over its claims surrounding the validity of the 911 Plan, Ordinance and contract with MMR under Michigan law pursuant to 28 U.S.C. § 1367. While Section 1367 provides federal district courts supplemental jurisdiction over a plaintiff's state law claims in certain instances, the statute provides that:

> [the district courts may decline to exercise supplemental jurisdiction over a claim . . . if: [t]he claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Generally, district courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254 (6th Cir. 1996). However, when the court dismisses a plaintiff's federal claims for lack of subject-matter jurisdiction, supplemental jurisdiction can *never* exist. *Id.* at 1255; *Bigelow v. Michigan Dep't of Nat. Resources,* 970 F.2d 154, 159 (6th Cir. 1992) (dismissal for lack of ripeness equivalent to dismissal for lack of subject matter jurisdiction; state law claims cease to be properly supplemental). Moreover, even after a Fed. R. Civ. P. 12(b)(6) dismissal, "there is a strong presumption in favor of dismissing supplemental claims." *Musson,* 89 F.3d at 1255. Because the Court lacks subject matter jurisdiction over this action, Plaintiff's state law

claim(s) are no longer properly supplemental, and the Court lacks jurisdiction to adjudicate those claims under 28 U.S.C. § 1367.

### E. Court Exercises its Broad Discretion to Decline Jurisdiction Under the Declaratory Judgment Act

In light of the above, the Court exercises its discretion not to grant any declaratory judgment. *Grand Trunk R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984) (the decision to grant "a declaratory judgment rests in the 'sound discretion' of the court[.]").  Although the Sixth Circuit has outlined a five-factor test for deciding whether to exercise jurisdiction in declaratory judgment cases, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008), there is no need to conduct this analysis where the Court lacks subject matter jurisdiction, as it does in this case. Such an analysis would not support the exercise of discretion in any event, but regardless, under these facts, the lack of subject matter jurisdiction forecloses the question so that the Court's discretion to make a declaratory judgment should not be exercised.

## V.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaint is **GRANTED**.

**SO ORDERED.**

Dated: July 31, 2018     s/Terrence G. Berg
                         TERRENCE G. BERG
                         UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on July 31, 2018.

s/A. Chubb
Case Manager